IDA C. JAMISON, Appellee, v. GEORGE McCORMICK et al., Appellants.

**WILLS: Oral Contract to Devise or Bequeath—Evidence—Sufficiency.**
1 Evidence reviewed, and held sufficient to establish the making of an oral contract by which claimant, in consideration of taking

care of the owner of certain property, was to have such property after the death of such owner.

**DEEDS:** Consideration—Evidence—Admissions of Grantor—Compe-
2    tency. The deed of a mentally competent grantor of real estate is given no added force by admissions of the grantor at the time of the execution of the deed that he was executing it in fulfillment of a long standing obligation to do so. If the grantor is mentally incompetent to execute the deed, then such admissions necessarily fall. If, when the deed was executed, equities in third parties were outstanding, then such admissions would be incompetent as against them.

**DEEDS:** Validity—Deed as Gift—Effect on Outstanding Equities. A
3    deed of *gift* cannot take priority over the prior equities of third persons supported by a valuable consideration.

**APPEAL AND ERROR:** Record—Correction—Where Made. Mis-
4    takes in the record in the lower court should be there corrected,— not in the supreme court.

*Appeal from Delaware District Court.*—HON. FRANKLIN C. PLATT, Judge.

FRIDAY, NOVEMBER 26, 1915.

ACTION to recover possession of real estate. The defendants set up an answer and cross-petition in equity, averring that they were the owners of the property in controversy and praying a decree quieting their title. The plaintiff answered the affirmative defense and cross-petition by setting up her alleged ownership of the property under a deed from the common grantor of the parties and praying decree that her title be quieted. To this answer, there was a reply by the defendants. By agreement, the case was set down first to be heard upon the equitable issues, and a trial thereon was had. The trial court entered a decree for the plaintiff, and the defendants have appealed.—*Reversed.*

*Arnold & Arnold* and *Carr & Carr*, for appellee.

*E. C. Perkins* and *Yoran & Yoran*, for appellants.

EVANS, J.—The property in controversy is a certain Lot 6 in the town of Delhi, together with a residence located thereon and its appurtenances. This property was formerly owned by Delamater, and both parties claim under him. The plaintiff claims under a deed executed and delivered by Delamater shortly prior to his death. The defendants claim under and by virtue of a parol contract entered into between Delamater and themselves, about twelve years before his death, whereby they were to become the absolute owners of such property at the death of Delamater. The defendants claim, also, that the deed to the plaintiff was executed by Delamater without consideration and at a time when he was mentally incompetent to make a gift. On the other hand, the plaintiff claims that such deed was executed and delivered to her in recognition of an obligation incurred many years prior, by reason of services rendered by her, and in pursuance of a promise made by Delamater to his wife, since deceased, that he would make such conveyance.

Delamater's wife died in February, 1897. There were no children. So far as appears from this record, Delamater had no near collateral relatives who had any claims upon his bounty. The plaintiff, Ida Jamison, was a niece of the wife, and resided for many years in Delhi. The defendant, George McCormick, was a nephew of the wife, and he formerly resided in Canada. There had been serious friction between Delamater and Oren and Linus Jamison, the husband and son of Ida Jamison. This had resulted in a lawsuit, brought by the Jamisons against Delamater, and a consequent estrangement between the parties. Mrs. Delamater was in poor health for a considerable time before her death. While she was still living, a correspondence was carried on with the nephew, George McCormick, then residing in Canada. This correspondence looked to an arrangement whereby McCormick and his wife should move to Delhi and take care of the Delamaters during their life and become the beneficiaries of their estate thereafter. In pursuance of this correspondence, there was first

a visit by McCormick to the Delamater home, and later a removal thereto.  They came to Delhi on February 23, 1897, Mrs. Delamater having died the day previous.  Mr. Delamater was at that time 73 years of age.  The final arrangement was entered into, therefore, with him.  They lived with him and took care of him from that time until his death, which occurred on May 20, 1909.  They lived for nearly two years in the Delhi home, which is the property now in controversy.  Thereafter, they moved to the Delamater farm, Delamater accompanying them there.  The property of Delamater consisted in the main of these two properties.  The decisive questions of fact in the case are:  1. Was there an agreement by Delamater with the defendants that they should have all his property after his death?  2. Was the deed to the plaintiff without consideration?  3. At the time of the execution of the deed to the plaintiff, was Delamater mentally incompetent to make a gift of this property?

If the first and the second question be answered in the affirmative, then the defendants must prevail.  If the first and third be answered in the negative, the plaintiff must prevail.  If the third question be answered in the affirmative, then also the defendants must prevail, because they are the only devisees of all Delamater's property and are the executors of his will.

I. Turning now to the details of the principal evidence bearing upon the alleged contract between Delamater and the McCormicks, the following appears:  McCormick received the following letter from Mrs. Delamater, under the date of July 19, 1896:

1. WILLS: oral contract to devise or bequeath: evidence: sufficiency.

"Dear Nephew:

"I have been very dilatory in answering your letter of Feb. 15th.  We are feeling fairly well at present, hoping this will find you enjoying good health and prosperity it has not been as dry this summer as it has been for the last two years,

oats is heavy, hay middling, corn prospects first rate and pota-
toes the same, stock of all kinds is low if you can possibly
come out here to see us come; we are getting pretty well along
in years and it may be to your interest to come; we want to
have a good long talk with you on matters and things that
we can't very well do in a letter. Write and let us know if
you can come or not, from your affectionate Aunt Mary
Delamater."

On July 23, McCormick came to Delhi and remained two
weeks. In 1897, under date of February 17th, he received the
following letter from Mr. Delamater:

"Delhi, Feb. 17, '97.

"Dear Nephew:

"Your Aunt Mary Delamater is failing. I wish you could
come out here right away if you can bring your wife along
with you and stay with us the remainder of the winter or until
Mary gets better if she does and if I should have the mis-
fortune to lose her I would want you to stay and help me fix
my affairs and I would make a sale and sell off all of the loose
property. You won't lose anything by coming. I won't have
anything to do with Oren Jamison or Linus since the way they
have used me.

"Your affectionate uncle,

"E. J. DELAMATER."

Upon receipt of such letter, both defendants came to
Delhi, as already indicated. It is undisputed that they took
charge of Delamater's home and took care of him until his
death, at 85 years of age. For several years of this time, he
was well preserved. He was a man of intelligence and mental
quality. It is also undisputed that, for several years, he was
well pleased with his relations to the McCormicks and was
free in his remarks of approbation. Many witnesses, ap-
parently disinterested, testified to conversations with him,
wherein he recited what his contract with the McCormicks

was, which was, in substance, that they were to have all his property after his death. With such testimony alone, however, we should be hardly satisfied. In June, 1898, he wrote his will with his own hand, whereby he gave conditionally to the McCormicks all his property, and wherein he included a specific description of his real estate, which description was somewhat involved and cumbersome. He obtained the legal cap paper upon which he wrote the will from attorney Perkins, with whom he usually counseled on legal affairs, and told him what he wanted to do with the paper. Perkins was one of the persons to whom he recited his arrangement with the McCormicks, and this he did at that time. In July, 1900, he rewrote his will, again devising all his property to the McCormicks conditionally. In the second will, the descriptions of real estate were omitted. The legal effect of both instruments was the same. These two wills were as follows:

"In the name of God, Amen. I, Eben James Delamater, of the township of Delhi, in the county of Delaware, and state of Iowa, of the age of seventy-four (74) years, and being of sound mind and memory, do make, publish and declare, this my last will and testament, in the manner following, that is to say: First, I give and bequeath to my nephew and niece, George McCormick and Emeline McCormick, his wife, all of my real estate, consisting of the southwest quarter, and the southwest quarter of the northwest quarter of Section 27, Township 88, North, Range 4 West of the 5th principal meridian, and the west ¾ of the N. E. N. E. Section 33 in Township 88, R. 4 West, and Lot 6 N. W. N. E. Sec. 20-88-4, Block 20, in the independent school district of Delhi, being my home in Delhi, Iowa, and also all of my personal property of whatever name or nature to have and to hold for their own use and benefit on condition that they take good care of me as long as I live, pay all of my debts and give me a decent burial in my lot in Earlville by the side of my wife. I hereby appoint George and Emeline McCormick executors of this, my last will

and testament. In witness whereof, I have hereunto set my hand and seal, this 25th day of June in the year of our Lord one thousand eight hundred and ninety-eight.

"EBEN JAMES DELAMATER."

"Last Will of Eben James Delamater.

"In the name of God, Amen: I, Eben James Delamater, of Delhi, in the county of Delaware, and state of Iowa, of the age of seventy-six (76) years and being of sound mind and memory, do make, publish and declare this, my last will and testament, in the manner following, that is to say: First, I give, devise and bequeath to my nephew and niece, George McCormick and Emeline McCormick, his wife, all of my property, both real and personal, of whatever name and nature, to have and to hold for their own use and benefit, on condition that they take good care of me as long as I live, pay all of my debts and give me a decent burial in my lot at Earlville by the side of my wife. I hereby appoint George and Emeline McCormick executors of this, my last will and testament. In witness whereof, I have hereunto set my hand and seal, this twenty-eighth day of July in the year of our Lord, one thousand nine hundred (1900).

"EBEN JAMES DELAMATER."

Both of these wills were delivered by Delamater to McCormick and left by McCormick in the custody of Perkins. It will be noted that both of these wills make the Mc-Cormicks the devisees, conditioned upon recited consideration. The consideration was executory. The evidence leaves no room for fair dispute that the McCormicks faithfully performed the condition. The recital of the consideration .in these wills and the delivery of the same to McCormick furnish most persuasive evidence as against the testator and those claiming under him of the terms of the arrangement between him and the McCormicks.

It is undisputed in the testimony that, after the date of

these wills, Delamater transacted no business on his own account, although he was mentally capable for many years of doing so. All buying and selling, hiring and paying were done by McCormick. The renting of the property in controversy was done by McCormick. His right to do business and to control the property was never challenged, nor was there any friction between him and Delamater with reference thereto. There is no fair escape from the conclusion that the contract as pleaded by the defendants was proved by that clear and satisfactory evidence which the law requires in such cases.

II. Was the deed to plaintiff without consideration? We have already recited the claim of the plaintiff that there was a pre-existing consideration. On this question, we have read the evidence with great care. Some support for this claim is to be found in the evidence of the plaintiff and her husband. This was all received under objection, as being incompetent under Sec. 4604, Code, 1897. The trial court ruled that it was incompetent when it was received. It must now be disregarded. The principal other testimony was that of the witness Mrs. Morse. This witness was evidently an old lady, about the age of Mrs. Delamater. She testified to a conversation had upon the occasion of a single visit to the Delamater home. Her evidence has been set out in full by question and answer in the abstract. Tender consideration should be had for the witness because of her age, but her evidence proves nothing. It is disconnected and confusing, and indicates mental confusion on the part of the witness. The other evidence on the question consisted in evidence of the members of the family, who testified to alleged admissions made by Delamater at or about the time that the deed was made. These admissions were to the effect that he had been, for many years, under obligation to make the deed, and was now performing such obligation. These admissions are of little aid to the plaintiff, for the manifest reason that they add nothing

2. DEEDS : consideration : evidence : admissions of grantor : competency.

to the force of the deed itself. The deed is regular upon its face and presumptively valid. The grantor was the record holder of the title. If, therefore, the grantor was mentally competent, and if he had a right, as between him and the McCormicks, to convey the property, then the deed executed by him clearly conveyed the title, and it had no need of the aid of contemporaneous admissions, either of obligation or of consideration. If, as between him and the McCormicks, they had an equitable right to the property, then such subsequent admissions would be incompetent as against them. If also he were mentally incompetent to make the deed, he would be equally mentally incompetent to make the admissions. So that, from whatever point we view it, his alleged admissions made at or about the time of executing the deed add no strength to it.

Upon this record, therefore, it must be found as a fact that, as against the McCormicks, there was no

3. DEEDS: validity: deed as gift: effect on outstanding equities.

consideration for the deed. It was a mere deed of gift. As between grantor and grantee, it might be valid for such purpose. It could not, however, take a priority over the equities of the McCormicks, which were prior in time and which were supported by valuable consideration.

III. Our foregoing conclusions are quite decisive of the result. There is, however, another question in the case, which became involved in some confusion or misunderstanding as

4. APPEAL AND ERROR: record: correction: where made.

between the counsel and court in the lower court. The defendants pleaded the incompetency of Delamater to make the deed in question to Mrs. Jamison. The parties agreed to submit the equitable issues for trial on the equity side. Such. agreement was stipulated in the record, and contained a recital of the equitable issues so transferred. This recital included the issue of mental incompetency. In the hearing of the evidence, the trial judge announced that he would not pass upon that issue, and excluded from the record considerable testimony offered

by the defendants along that line. The decree entered stated that no account had been taken of that question. The record as it is presented here clearly contains that question. It is suggested in argument by appellee that there is a mistake in the record in that regard. If that be so, then a correction of the record should have been obtained in the lower court. The record to be presented here must be made there. The record made there cannot be avoided here. The evidence in this record shows that, in the last two or three years of Delamater's life, he became afflicted with epilepsy and had frequent fits of unconsciousness and helplessness. His ability to care for his person became greatly impaired. His bodily evacuations either became involuntary or he became thoughtless of the circumstances under which they occurred. The care of him became very laborious. An attendant was employed to attend him wherever he went, to avoid the possible effects of a fit of unconsciousness. As his care became more laborious, he became more complaining and resentful. He resented the constant presence of an attendant. He became impressed, also, with the idea that the McCormicks were getting too much for caring for him. On the morning of the day on which he executed the deed in question, he appeared at the home of Perkins and proposed to deed the property in question to Perkins as a gift, for the alleged reason that the McCormicks were getting too much. Perkins refusing to accept the same, Delamater said that he would give it to Mrs. Jamison before he would let McCormick have it.

The evidence in the record shows a marked change in the mental condition of Delamater. In view of the attitude of the trial judge on the issue, the plaintiff introduced no testimony on this question. If the determination of this question were decisive of the result, we should be disposed to make some order remanding the case for further trial on this issue, because of the apparent misunderstanding on the first trial. Because of our conclusions upon the other features

of the case, and because these are necessarily decisive of the result, we need not formally pass upon the question here, nor would we be justified in remanding the case for further evidence.

For the reasons already indicated, we think the defendants must prevail, and the decree entered below must therefore be—*Reversed.*

DEEMER, C. J., WEAVER and PRESTON, JJ., concur.